IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

**EVA LAFAYE GAMMON**                                                                                    **PLAINTIFF**

V.                          **CASE NO. 2:16-CV-00031 BRW/JTR**

**CAROLYN W. COLVIN,**
**Acting Commissioner,**
**Social Security Administration**                                                                      **DEFENDANT**

## RECOMMENDED DISPOSITION

**I.    Procedures for Filing Objections:**

The following Recommended Disposition ("Recommendation") has been sent to United States District Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**II.  Introduction:**

Plaintiff, Eva Lafaye Gammon ("Gammon"), applied for disability benefits, alleging a disability onset date of October 1, 2012. (Tr. at 19). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 29). The Appeals Council denied her request for review. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner. Gammon has requested judicial review.

For the reasons discussed below, the Court recommends that the decision of the

Commissioner be affirmed.

### III. The Commissioner's Decision:

The ALJ found that Gammon had not engaged in substantial gainful activity since the alleged onset date of October 1, 2012. (Tr. at 21). The ALJ found at Step Two that Gammon had the following severe impairments: coronary artery disease status-post stent placement; coronary artery bypass graft; lumbar degenerative disc disease; and obesity. (Tr. at 21). At Step Three, the ALJ determined that Gammon's impairments did not meet or equal a listed impairment. (Tr. at 23). Before proceeding to Step Four, the ALJ determined that Gammon had the residual functional capacity ("RFC") to perform light work, except for the following limitations: 1) occasional climbing of stairs/ramps, balancing, kneeling, stooping, crouching, and crawling; and 2) never climbing ladders. *Id.*

At Step Four, the ALJ found that Gammon was not capable of performing any past relevant work. (Tr. at 27). However, after considering Gammon's age, education, work experience, and residual functioning capacity, the ALJ concluded, at Step Five, that there are jobs that exist in significant numbers in the national economy that Gammon could perform. (Tr. at 28). Thus, the ALJ held that Gammon was not disabled. *Id.*

### IV.    Discussion:

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g).

While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.  Gammon's Arguments on Appeal

Gammon argues that substantial evidence does not support the ALJ's decision to deny benefits. She contends that the ALJ erred in determining her RFC and in finding, at Step Five, that she is capable of performing other work. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Gammon's arguments encompass only her back disorder, so the Court limits its discussion to that impairment. Gammon contends that, if the ALJ had given the opinions of Dr. Rosenzweig more weight, she would have added limitations to her hypothetical question to the vocational expert ("VE"), and those additional limitations would have ruled out any available jobs.

While Gammon did seek treatment for her back problems over a period of two years, she only saw Dr. Rosenzweig three times. There is a January 7, 2013 note from his office that says she is excused from work until she is seen again. (Tr. at 372). On January 28, 2013, Dr. Rosenzweig reported increased lordosis and irregular S1 joints with no evidence of fractures or spondylothesis. (Tr. at 369). Gammon told Dr. Rosenzweig that injections and medications were not helping and he referred her to physical therapy. (Tr. at 368- 69). Dr. Rosenzweig found diminished mobility and reflexes but stated there were "no contraindications to continue working." (Tr. at 369). On February 26, 2013, Gammon told Dr. Rosenzweig that she was not working because there was no light duty work available. (Tr. at 367). He told her to return for further treatment as needed. She did not.

Dr. Rosenzweig filled out a checkbox medical source statement based on these three visits. (Tr. at 366). It said Gammon could return to limited duty, not lift more than 15 pounds, and not do continuous bending, lifting, or twisting. (Tr. at 366). He did not reference any clinical observations or objective testing on the form. Checkbox opinions, especially by a doctor who has only examined the claimant over a two month period, are entitled to little weight in the evaluation of disability. *See Taylor v. Chater*, 118 F.3d 1274, 1279 (8th Cir. 1997). An ALJ may discount or disregard the opinion of a treating physician when other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of the opinions. *Miller*, 784 F.3d at 477. Without more explanation or support for his opinion, Dr. Rosenzweig's conclusory statement was given the proper weight by the ALJ.

The remaining medical evidence did not support significant limitations to Gammon's back. An October 4, 2012 examination showed back pain and strain, but full range of motion and stable condition with no muscle spasm or weakness. (Tr. at 330). An October 2012 MRI showed degenerative disc disease at L4-5 and L5-S1 with spondylosis, but with no disc herniation. (Tr. at 299, 332). Such a diagnosis, standing alone, does not support a finding of disability. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (evidence of degenerative disc disease and bulging disc does not support finding of disability).

On February 8, 2013, Gammon was treated at Helena Regional Medical Center for low back pain. Her reflexes and balance were intact, but there was some tenderness and decreased range of motion. (Tr. at 336). She had a positive straight-leg raise on the right and a negative on the left. *Id*.

A state-agency examiner reviewed the medical records on June 14, 2013 and determined that Gammon could work at the light level with occasional stooping and crouching. (Tr. at 99). The examiner said that treatment and exercise would improve the condition. (Tr. at 97).

In April 2014, Gammon saw Dr. Samuel Meredith for her back. He found lumbar pain, with radiation and decreased range of motion, but her gait and straight-leg raise were normal. (Tr. at 418). Dr. Meredith did not refer her for surgery, and he noted that her pain was disproportionate. *Id.*

Gammon saw APN Lashica Scaife on five occasions in late 2013 and 2014. Gammon's primary complaints were vaginal itching, ear pain, and coughing. She mentioned

back pain at each visit, and Nurse Scaife refilled her medications and encouraged exercise. (Tr. at 386). In the limited time Nurse Scaife saw Gammon, she did not perform any clinical testing or reference diagnostic results. This led the ALJ to assign little weight to her medical source statement documenting serious limitations. (Tr. at 414). Moreover, Nurse Scaife is not an acceptable medical source. *See* 20 C.F.R. § 404.1513(a)(1)-(5). In determining what weight to give "other medical evidence," the ALJ has more discretion and is permitted to consider any inconsistencies found within the record. *Id.* § 404.1527(d)(4); *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (evaluating therapist's assessment as "other medical evidence" rather than as a treating source opinion).

On at least two occasions Gammon's doctors instructed her to exercise to ameliorate her chronic pain. (Tr. 362, 386). This advice, coupled with her daily activities of housework, cooking, shopping, and attending church, indicate that Gammon is capable of performing physical activity sufficient to support the ALJ's Step Five determination. (Tr. at 26). *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (encouragement to exercise constituted evidence in support of ALJ's findings); *Gray v. Apfel*, 192 F.3d 799, 804 (8th Cir. 1999) (activities of daily living considered with other evidence can support a finding of not disabled).

It is the ALJ's function to resolve conflicts among the various treating and examining physicians. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). The medical evidence in this case supports the findings of the ALJ. Even if the evidence calls into question the ALJ's decision, the Court still must defer to the ALJ provided her decision falls within "the

available zone of choice." *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ is not outside the zone of choice merely because the court may have reached a different result. *Id.* If the court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the Court must affirm. *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005). Considering the record as a whole, the ALJ assigned the proper weight to the treating providers' opinions and reached the correct result.

Finally, the Court concludes there is no merit to Gammon's argument that the hypothetical posed to the VE did not include all of Gammon's limitations. The ALJ was not required to incorporate all of Dr. Rosenzweig's restrictions in the hypothetical as his opinion exaggerates Gammon's condition and is not supported by objective evidence. The ALJ added restrictions to Gammon's light RFC, striking a balance between Dr. Rosenzweig's opinion, Nurse Scaife's report, and the report of the state agency examiner. The hypothetical took into account the entire record and adequately reflected Gammon's RFC. Overall, the ALJ's decision was supported by substantial evidence.

## V. **Conclusion:**

Substantial evidence supports the Commissioner's decision that Gammon was not disabled. The ALJ correctly determined the RFC and did not err in her analysis at Step Five. Therefore, the finding that Gammon was not disabled within the meaning of the Social Security Act should be affirmed, and the case should be dismissed, with prejudice.

DATED this 28th day of October, 2016.

*/s/ J. Thomas Ray*
_____
UNITED STATES MAGISTRATE JUDGE